UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

OLEG MASKAEV,

            Plaintiff,

-versus-

DENNIS RAPPAPORT, and DENNIS
RAPPAPORT PRODUCTIONS, LTD.,

            Defendants.

ORDER
12-cv-6008

APPEARANCES

    By:    Jethro M. Eisenstein
           PROFETA & EISENTEIN
           45 Broadway, Suite 2200
           New York, NY 10006
           *Attorney for Plaintiff*

    By:    Patrick C. English
           DINES AND ENGLISH, L.L.C.
           685 Van Houten Avenue
           *Attorney for Defendants*

JOHN GLEESON, United States District Judge:

        This is an action for damages brought by a heavyweight boxer against his promoter. On February 14, 2013, Plaintiff Oleg Maskaev filed an Amended Complaint[1] against defendants Dennis Rappaport and Dennis Rappaport Productions, Ltd. ("DRP"), asserting two violations of the Muhammad Ali Boxing Reform Act, 15 U.S.C. § 6301, *et seq*., (the "Ali Act"). Specifically, Maskaev asserts that (1) the defendants "received compensation in connection with a Maskaev match . . . without disclosing to Maskaev the amount of compensation they had contracted to receive," in violation of 15 U.S.C. § 6307e(b); and that (2) the defendants "received

---

[1] Maskaev filed his initial complaint on December 5, 2012. On February 1, 2013, Defendants laid out their arguments in favor of a motion to dismiss. A few days later, Maskaev amended his complaint to drop claims alleging breach of the contract and breach of fiduciary duties against the defendants and dropping Linda Goldrich Rappaport – his manager – as a named defendant.

a financial interest from the management of Maskaev by directing payment of [a share] of Maskaev's purse for the [Hasim] Rahman fight to . . . the wife of defendant Dennis Rappaport" in violation of 15 U.S.C. § 6308(A). Before me now is defendants' Motion to Dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, to stay this action pending the outcome of arbitration pursuant to section 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3. Defendants contend that Maskaev is contractually bound to raise his Ali Act claims in an arbitral forum.

I heard oral argument on the motion on March 28, 2013. On April 14, 2013, I ordered the defendants to submit supplement briefing.[2] *See* Order, ECF No. 13. For the reasons that follow, I conclude that Maskaev's claims under the Ali Act fall outside the scope of the arbitration agreement. Accordingly, the motion to dismiss is denied.[3]

## BACKGROUND

A. *Background Facts*

Maskaev is a heavyweight professional boxer and Dennis Rappaport is a boxing promoter and the president and owner of defendant DRP. Am. Compl. ¶ 3, 4. In March 2006, Maskaev signed an exclusive promotional agreement with DRP. *Id.* ¶ 11. On April 27, 2006, DRP entered into an agreement with Top Rank, Inc. to provide Maskaev's services for a World Boxing Council ("WBC") championship fight against Rahman in Las Vegas, Nevada. *Id*. ¶ 12. According to the complaint, the truth of which I assume at this stage, if Maskaev fought and defeated Rahman, Top Rank would provide for payment of $1,500,000 to DRP; DRP, in turn, was responsible for paying Maskaev's purse from this amount. *Id.* Maskaev's purse was valued at

---

[2] Specifically, I asked the defendants to address the following three questions: "(1) whether the plaintiff may vindicate his rights under the Ali Act in the arbitral forum; (2) whether the fee-shifting provision that requires that attorneys' fees be awarded to the prevailing party is enforceable in the arbitral forum, *see* Promotional Agreement ¶ 38, Ex. A, Decl. of Dennis Rappaport, ECF No. 10; (3) why the Court shouldn't strip the arbitration agreement of the requirement that the plaintiff pay the defendants' attorneys' fees if the defendants prevail in arbitration." Order, ECF No. 13.
[3] As I conclude that the parties did not agree to arbitrate plaintiff's claims under the Ali Act, I need not address issues raised in the supplemental briefing.

2

$900,000 plus $100,000 training expenses. *Id.* ¶ 13.

On August 12, 2006 Maskaev fought and defeated Rahman, securing the title of WBC heavyweight champion. *Id.* ¶ 14. DRP received and accepted a $500,000 payment from Top Rank, Inc., but did not inform Maskaev or obtain his consent before receiving this payment. *Id.* ¶ 15. Next, without informing Maskaev or obtaining his consent, the defendants "benefited from Maskaev's purse by directing payment to Linda Goldich Rappaport[4] of the one-third manager's share of Maskaev's purse," *id.* ¶ 16.

DISCUSSION

A. *The Agreement to Arbitrate*

The parties entered into a written promotional contract under which DRP would become the exclusive promoter of Maskaev's prizefights. This agreement contained a mandatory arbitration provision. The crux of the parties' disagreement on this motion is whether Maskaev's alleged violations of the Ali Act fall within the scope of the agreement to arbitrate. The arbitration provision at issue reads in full:

> In the event of *any dispute arising under or relating to the terms of this Agreement or any breach thereof, it is agreed that the same shall be submitted for arbitration* to be held in accordance with the Commercial Arbitration Rules promulgated by the American Arbitration Association, and judgment upon any award rendered may be entered in any court having jurisdiction thereof. In the event of litigation or arbitration arising from or out of this Agreement or the relationship of the parties created hereby, the prevailing party or parties shall be entitled to recover any and all reasonable attorney's fees and other costs incurred in connection therewith. This arbitration provision shall remain in full force and effect notwithstanding the nature of any claim or defense hereunder.

Promotional Agreement, Defs.' Ex. A, ECF 10-3 (emphasis added).

Defendants argue that claims under the Ali Act "relate[] to the terms of the

---

[4] Linda Rappaport, Maskaev's "'personal manager' in relation to boxing," is married to Defendant Rappaport. Compl. ¶ 6. Maskaev signed a personal service agreement with Linda Rappaport at defendant Rappaport's "direction and request," even though Ms. Rappaport was "not licensed as a boxing manager," and "never provided services for Maskaev." *Id.* ¶¶ 6-7, 11.

contract," because, "[w]ere it not for the contracts[,] plaintiff and defendants would have no relationship," Defs.' Mem. in Supp. of Mot. to Dismiss 7, ECF No. 10-2; *see also id.* 1-2. Thus, defendants contend that Maskaev's allegations that the defendants violated the Ali Act fall within the scope of the arbitration clause.

In response, Maskaev argues that the arbitration provision is drafted to encompass only those disputes "arising under or relating to the *terms of* th[e] Agreement," Pl.'s Mem. of Law in Opp'n to Mot. to Dismiss 5-6, ECF No. 11 (emphasis added). The arbitration agreement does not extend to any dispute arising from "the relationship of the parties." *Id.* at 6 (quoting the second sentence of the arbitration agreement). And, the argument concludes, "[s]ince defendants' statutory obligations to plaintiff have nothing to do with the terms of the agreement," the claims under the Ali Act fall outside of the scope of the agreement to arbitrate. *Id.* In further support, Maskaev points out that the arbitration provision expressly contemplates that "litigation *or* arbitration [may] arise[e] from or out of this Agreement." *Id.* (emphasis added) (quoting the second sentence of the arbitration agreement).

B. *The Governing Law*

The Federal Arbitration Act is a "congressional declaration of the liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Any doubts or ambiguities should be resolved in favor of arbitration. *Id.* at 24-25. To decide this motion, I must consider, first, whether there is a valid arbitration agreement and, second, whether the parties' dispute falls within the scope of that arbitration agreement.[5] If a dispute falls within the scope of an agreement to arbitrate, I then must either (1) stay the action that is subject to arbitration until the arbitration is complete or (2) dismiss the action when all of the issues in it must be arbitrated. *See Borrero v. Ruppert Housing Co., Inc.*, No. 08 CV 5869, 2009 WL 1748060, at *2 (S.D.N.Y. June 19, 2009). The determination of

---

[5] The parties agree that these questions ought to be decided by this Court in the first instance.

whether to dismiss or stay a claim governed by an arbitration clause depends on whether any "useful purpose will be served by granting a stay of [the] proceedings." *Berger v. Cantor Fitzgerald Secs.*, 967 F.Supp. 91, 96 (S.D.N.Y. 1997).

C. *Analysis*

The determination of whether Maskaev's claims under the Ali Act fall within the scope of the arbitration clause depends on the parties' intent when forming the agreement. When interpreting a contract, courts "must be careful to carry out the specific and limited intent of the parties." *McDonnell Douglas Fin. Corp. v. Pa. Power & Light Co.*, 858 F.2d 825, 832 (2d Cir. 1988). Under New York law – which the parties agree applies in this case – an interpretation of a contract that has "the effect of rendering at least one clause superfluous or meaningless . . . is not preferred and will be avoided if possible." *Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992) (internal quotation marks omitted). Therefore, in interpreting the parties' arbitration agreement, courts are obliged to give "full meaning and effect to all of its provisions." *Am. Express Bank Ltd. v. Uniroyal, Inc.*, 164 A.D.2d 275, 277 (1st Dep't 1990) (citation omitted). Although federal policy "requires us to construe arbitration clauses as broadly as possible," *S.A. Mineracao da Trindade-Samitri v. Utah Int'l, Inc.*, 745 F.2d 190, 194 (2d Cir. 1984), we are bound by the words on the page.

Under defendants' theory, since the promotional contract created a relationship between Maskaev and the defendants, any dispute arising between the parties "relates to the terms" of the contract. Under the defendants' construction of the arbitration provision, the word "terms" would be entirely superfluous, as *any* dispute arising out of the contractual relationship – not just one relating to its *terms* – would be subject to arbitration. Such a broad reading of the arbitration provision does not comport with the plain language of the agreement. Read together, the entire arbitration provision expressly contemplates that disputes may be subject to litigation *or* arbitration, and identifies a subset of disputes – those related to the *terms* of the agreement – that

will be subject to mandatory arbitration.   Financial disclosure is not discussed in the agreement; thus, Maskaev's claims that the defendants violated the federal statutory disclosure obligations under the Ali Act do not relate to the terms of the agreement.

    Since the present dispute is related to a matter that is not encompassed in the terms of the agreement, I conclude that the present dispute is outside the scope of the arbitration agreement.  Accordingly, defendants' motion to dismiss, or in the alternative to stay the proceeding, is denied.

    So ordered.

                                                    John Gleeson, U.S.D.J.

Dated: May 13, 2013
       Brooklyn, New York