UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FOR ONLINE PUBLICATION ONLY

|  |  |
|---|---|
| OLEG MASKAEV,<br><br>                              Plaintiff,<br><br>         - versus -<br><br>DENNIS RAPPAPORT AND DENNIS RAPPAPORT PRODUCTIONS, LTD.,<br><br>                              Defendants. | <u>MEMORANDUM<br>AND ORDER</u><br>12-CV-6008 (JG) |

APPEARANCES:

       PROFETA & EISENSTEIN
             45 Broadway, Suite 2200
             New York, New York 10006
       By:    Jethro M. Eisenstein
             *Attorneys for Plaintiff*

       DINES AND ENGLISH, L.L.C.
             685 Van Houten Avenue
             Clinton, New Jersey 07013
       By:    Patrick C. English
             *Attorneys for Defendants*

JOHN GLEESON, United States District Judge:

        Plaintiff Oleg Maskaev brings this action alleging violations of two provisions of the Muhammad Ali Boxing Reform Act, 15 U.S.C. § 6301 *et seq*. (the "Ali Act"). Defendants Dennis Rappaport and Dennis Rappaport Productions, Ltd. move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons discussed below, defendants' motion is granted.

BACKGROUND

A.  *The Facts*[1]

Plaintiff Oleg Maskaev is a professional heavyweight boxer and former World Boxing Council ("WBC") heavyweight champion. Maskaev Decl. ¶ 1; Def. Rule 56 Stmt. ¶ 34. Defendant Dennis Rappaport Productions ("DRP") was Maskaev's promoter, and Defendant Dennis Rappaport ("Rappaport") is the principal of DRP. *See id*. ¶ 47. Rappaport's wife, Linda Rappaport,[2] and Dennis and Linda Rappaport's long-time friend, Fred Kesch,[3] served as Maskaev's managers. Maskaev entered into agreements with these individuals that spelled out each of these professional relationships. I will discuss them chronologically.

1.  *Services Agreement*

In September 2002, Maskaev entered into a contract titled "Personal Services Agreement" with Linda Rappaport and Fred Kesch. Linda Rappaport Decl. ¶ 1, Ex. A ("Services Agreement"). The Services Agreement provided that Linda Rappaport would represent Masaev as his personal manager and advise him on matters including endorsements, travel, and publicity. Services Agreement ¶¶ 1-2; *see also* Def. Rule 56 Stmt. ¶¶ 24-28. Maskaev denies that Linda Rappaport assumed these duties and admits only that Linda Rappaport made travel arrangements for Maskaev. Pl. Rule 56 Stmt. ¶¶ A24-A28. The Services Agreement also provided that Kesch would be Maskaev's boxing manager and attorney-in-fact, and Maskaev would enter into a standard boxing manager's contract with Kesch in jurisdictions where Kesch was licensed and Maskaev fought. Services Agreement ¶¶ 6, 8.

---

[1] Unless otherwise noted, the facts set forth here are either undisputed, or, if disputed, are viewed in the light most favorable to Maskaev, the nonmoving party. *See Abramson v. Pataki*, 278 F.3d 93, 101 (2d Cir. 2002).
[2] Linda Rappaport is the wife of Dennis Rappaport and was married to him during the times relevant to this case. *See* Linda Rappaport Decl. ¶ 1; Pl. Rule 56 Stmt. ¶ A29.
[3] Kesch was a long-time friend of Linda and Dennis Rappaport. Pl. Rule 56 Stmt. ¶ B4. Kesch died in 2013. *See* Eisenstein Decl. ¶ 4, Ex. 3.

Under the Services Agreement, Linda Rappaport would receive one-third of Maskaev's compensation after expenses were deducted. Def. Rule 56 Stmt. ¶ 16. Linda Rappaport was also obligated to pay Maskaev a signing bonus of $7,000 and $2,500 per month for the first year of the Services Agreement. *Id*. ¶ 18. Maskaev contends that Kesch received no more than 25% of the one-third compensation provided for in the Services Agreement and the balance went to Linda Rappaport. Pl. Rule 56 Stmt. ¶¶ B6-7.

2. *Promotional Agreement*

On March 7, 2006, DRP and Maskaev entered into an agreement that made DRP Maskaev's exclusive promoter. *See* Rappaport Decl. ¶ 16, Ex. B ("Promotional Agreement"). The parties dispute the relationship between DRP and Maskaev prior to the Promotional Agreement, and also the amount of compensation received by DRP. Maskaev states that DRP was his exclusive promoter from 2002 through 2006, based on an oral agreement. Pl. Rule 56 Stmt. ¶ A32. Defendants acknowledge only that DRP promoted some of Maskaev's events before 2006. *See* Def. Rule 56 Stmt. ¶ 32. Maskaev asserts that between 2003 and 2008, Rappaport and DRP were compensated for promoting Maskaev through Linda Rappaport's management share. Pl. Rule 56 Stmt. ¶¶ B12-13.

The Promotional Agreement gave Maskaev the right to review all books and records related to any fight in which Maskaev participated. Def. Rule 56 Stmt. ¶ 42.

3. *Top Rank Agreement and Bout Agreement*

After DRP became Maskaev's promoter, Maskaev assumed what was known as a "mandatory position" under the rules of the WBC, which meant that he had the right to fight for the championship title. *See id*. ¶ 36; Pl. Rule 56 Stmt. ¶ A36. At the time, in March 2006, the boxer Hasim Rahman was the holder of the WBC heavyweight title. Def. Rule 56 Stmt. ¶ 37.

The Rahman/Maskaev fight was scheduled for August 12, 2006. *Id*. ¶ 52. Rahman was promoted by the company Top Rank, Inc., which was owned and headed by Robert Arum. *Id*. ¶ 46.

Arum and Rappaport negotiated the Rahman/Maskaev title fight and ultimately Top Rank agreed to pay $1.5 million to DRP. *Id*. ¶¶ 46-50. From that amount, Maskaev would receive a purse of $900,000 and $100,000 for training expenses and participation in pay-per-view. *See id.*¶ 50; Pl. Rule 56 Stmt. ¶ A50. DRP entered into a contract with Top Rank on April 27, 2006, consistent with these terms. Def. Rule 56 Stmt. ¶ 52; Rappaport Decl.¶ 32, Ex. C, Provision of Services Agreement ("Top Rank Agreement"). Kesch knew of the negotiations and the amount to be received by DRP from Top Rank. Def. Rule 56 Stmt. ¶ 51.[4]

Subsequent to the Top Rank Agreement, on July 31, 2006, DRP and Maskaev entered into a contract for Maskaev to participate in the Rahman fight. *Id*. ¶ 53, Rappaport Decl. ¶ 32, Ex. D., Official Bout Agreement ("Bout Agreement"). The Bout Agreement provided that Maskaev was to receive a purse of $900,000 and training expenses of $100,000, along with a portion of pay-per-view receipts. Def. Rule 56 Stmt. ¶ 51. Both Maskaev and Kesch signed the Bout Agreement. *Id*. ¶ 54. The Bout Agreement did not disclose the additional $500,000 paid to DRP, comprising the total figure of $1.5 million.

Maskaev fought against Rahman on August 12, 2006, and won the fight, claiming the WBC Heavyweight Championship. *Id*. ¶ 56.

  4. *Disclosure of DRP's Earnings*

After every fight, DRP, Kesch, and Certified Public Accountant Joel S. Zuller developed an accounting with Maskaev. *Id*. ¶ 63. The accounting after the Rahman fight listed

---

[4] Maskaev points out that since Kesch is deceased, Maskaev has no grounds to challenge this assertion. *See* Pl. Rule 56 Stmt. ¶ 51.

the total income received as $1,023,000. *Id*. ¶ 64; Rappaport Decl. ¶ 42, Ex. E (the "Accounting").[5] Maskaev agrees that Rappaport and Kesch provided Masaev with the Accounting on September 1, 2006, and says it was similar in format to the accounting statements in other fights. Pl. Rule 56 Stmt. ¶¶ B22, 24.

In addition to the Accounting, defendants contend that at the direction of Rappaport, Wayne Schmidt, Rappaport's assistant, typed and sent to Maskaev a statement of gross revenue received from Top Rank. Def. Rule 56 Stmt. ¶ 65; Schmidt Decl. ¶¶ 3-4, Ex. A ("Gross Revenue Statement").[6] The Gross Revenue Statement says the total revenue received by DRP from Top Rank was $1.5 million. It also states that Maskaev's purse was $1 million, comprised of $900,000 and $100,000 in training expenses. Def. Rule 56 Stmt. ¶ 71; Gross Revenue Statement. Maskaev denies that the Gross Revenue Statement was sent to him at any time. Pl. Rule 56 Stmt. ¶¶ A68-70. Defendants also say a copy of the Gross Revenue Statement was filed by DRP in the normal course of business, but Maskaev denies this. *See* Def. Rule 56 Stmt. ¶ 70; Pl. Rule 56 Stmt. ¶ A70.

Defendants argue that even if Maskaev did not receive the Gross Revenue Statement, he should have known of the $1.5 million amount because several news articles covering the fight erroneously reported that Maskaev's purse was $1.5 million. Def. Rule 56 Stmt. ¶ 73. They also point to an interview where Rappaport stated that the Maskaev "side" received $1.5 million, which was published in an article dated August 23, 2006. *Id*. ¶ 74.

---

[5] Maskaev's purse is listed as $1 million. The additional $23,000 is comprised of income from "Sponsor" and "ESPN." *See* Accounting. The $23,000 will not be included in discussion of the $1 million purse.

[6] Defendant's Rule 56 Statement says that Schmidt prepared the Gross Revenue Statement and mailed it to Maskaev at 121 Essex Drive, Staten Island, New York. Def. Rule 56 Stmt. ¶¶ 66-69; Schmidt Decl. ¶¶ 6-9. Maskaev contends that according to Schmidt's Declaration, the Gross Revenue Statement was sent to 225-01 Linden Boulevard, Cambria Heights, New York, which was the address of DRP, not Maskaev's home address. Pl. Rule 56 Stmt. ¶¶ B26-27. Defendants' reply brief includes a supplemental declaration from Schmidt that clarifies the Gross Revenue Statement was sent to Maskaev at 121 Essex Drive, Staten Island, New York. *See* Def. Reply 2; Supp. Schmidt Decl. ¶¶ 1-4.

5

Defendants say that the interview tried to correct early reports and make clear that DRP received $1.5 million, but Maskaev admits only that the article referenced the Maskaev "side" receiving $1,500,000. *See id.*; Pl. Rule 56 Stmt. ¶ A74.

Maskaev asserts that before November 2009, he did not know that Top Rank received $500,000 in addition to the $1 million purse reflected on the Accounting for the Rahman fight. *Id.* ¶ B30. He further asserts that in November 2009, Kesch told him that the Accounting was incomplete. *Id.* ¶ B28. At that time, Maskaev received a copy of the Top Rank Agreement. Def. Rule 56 Stmt. ¶ 76. After receiving the Top Rank Agreement, Maskaev did not ask Rappaport about the additional $500,000 referenced in the Top Rank Agreement. *Id.* Maskaev admits that he continued to work with Rappaport until December 2009 and to talk to him throughout 2010. *Id.*; *see also* Pl. Rule 56 Stmt. ¶ A76.

### 5. *Additional Income Received by DRP*

Maskaev's second claim relates to the total income received by DRP and alleges that DRP wrongly received some of the compensation meant for Linda Rappaport. Maskaev alleges that all the bonus money and stipends outlined in the Promotional Services Agreement that were supposed to be paid by Linda Rappaport were instead paid to Maskaev by DRP. Pl. Rule 56 Stmt. ¶¶ A30, B8-10. Maskaev argues that DRP then recouped those amounts out of Maskaev's earnings. *See id.* Defendants deny that DRP paid all of the bonuses to Maskaev, but they admit that Dennis Rappaport advanced some of the bonus money paid to Maskaev on Linda Rappaport's behalf before DRP entered into an agreement with Maskaev. *See* Def. Rule 56 Stmt. ¶ 30.

Maskaev contends that on the understanding that the total income received from the Rahman fight was $1 million, he did not object to Rappaport receiving one-third of that

amount. Pl. Rule 56 Stmt. ¶ B20, 24-25. He argues that if he had known of the additional $500,000 received by DRP from the Rahman fight, he would not have agreed that Rappaport or DRP should be compensated "indirectly in the amount of $271,000 and directly in the amount of $500,000, so that Dennis Rappaport and Linda Rappaport collectively received over $700,000 from the fight." *Id.* ¶ B31.

Maskaev argues that in later fights, with Peter Okello and then Sam Peters, Rappaport and DRP also received money indirectly, through Linda Rappaport. *Id.* ¶¶ A78-79. Defendants deny that DRP took a fee from either the Okello or Peters fights. Def. Rule 56 Stmt. ¶¶ 78-79.

      B.    *Summary of the Dispute*

Maskaev asserts two violations of the Ali Act. The first, against Rappaport and DRP, is a violation of 15 U.S.C. § 6307e(b) for receiving compensation from the Rahman fight without disclosing to Maskaev the amount of compensation Rappaport and DRP contracted to receive. Amended Compl. ¶¶ 19-21. The second, also against Rappaport and DRP, is a violation of 15 U.S.C. § 6308(A) for receiving a financial interest from the management of Maskaev by directing payment of one-third of the manager's share of Maskaev's purse for the Rahman fight to Linda Rappaport. *See id.* ¶¶ 22-24. Maskaev asserts no claims against Linda Rappaport.

Maskaev brought this action on December 5, 2012, and filed an amended complaint on February 14, 2013. On May 13, 2013, I denied defendants' motion to dismiss. Defendants filed this motion for summary judgment on September 12, 2014. I heard oral argument on October 17, 2014.

7

DISCUSSION

On this motion for summary judgment, Defendants argue that Maskaev has not established a violation of either Sections 6307e(b) or 6308(A) of the Ali Act. They argue that Maskaev initiated the action after the statute of limitations for both claims had passed, and that Maskaev has suffered no damages. Because I find that the statute of limitations for Maskaev's claims expired before he brought suit, I grant the motion for summary judgment.

  A.  *The Summary Judgment Standard*

A court may grant summary judgment if the moving party shows that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "In deciding whether there is a genuine issue of material fact as to an element essential to a party's case, the court must examine the evidence in the light most favorable to the party opposing the motion, and resolve ambiguities and draw reasonable inferences against the moving party." *Abramson v. Pataki,* 278 F.3d 93, 101 (2d Cir. 2002) (citation omitted).

On the other hand, in order "[t]o survive summary judgment . . . the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Reiseck v. Universal Commc'ns of Miami,* No. 06-cv-777, 2012 WL 3642375, at *2 (S.D.N.Y. Aug. 23, 2012) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 n. 11 (1986)). However, "[c]onclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact[,]" *Kerzer v. Kingly Mfg.,* 156 F.3d 396, 400 (2d Cir. 1998), and the "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment. *Anderson,* 477 U.S. at 252. Summary judgment is appropriate if the evidence produced would

not allow a reasonable juror to find in favor of the nonmoving party. *See Mitchell v. Shane*, 350 F.3d 39, 47 (2d Cir. 2003).

    B.    *The Muhammad Ali Act*

Congress passed the Ali Act in 2000, "to protect the rights and welfare of professional boxers on an interstate basis by preventing certain exploitive, oppressive, and unethical business practices . . . ." Muhammad Ali Boxing Reform Act, Pub. L. No. 106-210, § 3, 114 Stat. 321 (2000). The Act creates a private right of action for "any boxer who suffers economic injury as a result of a violation of any provision of this chapter" and allows the boxer to "recover the damages suffered, court costs, and reasonable attorneys fees and expenses." 15 U.S.C. § 6309. Defendants argue that Maskaev has not suffered the economic injury required to bring an action under the Ali Act.

In his Amended Complaint, Maskaev asserts two causes of action under the Ali Act. The Act provides that certain disclosures, sometimes referred to as "Muhammad Ali Act Statements," must be made to boxers before a promoter receives "any compensation directly or indirectly in connection with a boxing match . . . it promotes." *See* 15 U.S.C. § 6307e(b). Those disclosures are:

> (1) the amounts of any compensation or consideration that a promoter has contracted to receive from such match; (2) all fees, charges, and expenses that will be assessed by or through the promoter on the boxer pertaining to the event, including any portion of the boxer's purse that the promoter will receive, and training expenses; and (3) any reduction in a boxer's purse contrary to a previous agreement between the promoter and the boxer or a purse bid held for the event.

15 U.S.C. § 6307e(b). Maskaev claims that defendants did not disclose the additional $500,000 received by DRP in connection with the Top Rank Agreement, in violation of Section 6307e(b) of the Ali Act. Defendants argue that DRP made the required disclosures to Kesch by giving him access to the Top Rank Agreement, and to Maskaev by sending him the Accounting.

9

Additionally, defendants argue that the full compensation was disclosed in press interviews around the time of the Rahman fight. *See* Def. Br. 1.

Maskaev's second claim falls under a provision of the Ali Act that establishes a separation between promoters and managers. Section 6308(b) of the Ali Act requires a "firewall between promoters and managers," making it unlawful for:

> (A) a promoter to have a direct or indirect financial interest in the management of a boxer; or (B) a manager--(i) to have a direct or indirect financial interest in the promotion of a boxer; or (ii) to be employed by or receive compensation or other benefits from a promoter, except for amounts received as consideration under the manager's contract with the boxer.

15 U.S.C. § 6308(b).[7] Maskaev argues that defendants violated the firewall provision of the Ali Act by "directing the payment of the one-third manager's share of Maskaev's purse for the Rahman fight" to Linda Rappaport. Amended Compl. ¶¶ 22-23. In their motion for summary judgment, defendants assert that because the Services Agreement was signed years before the Promotional Agreement, Maskaev knew that one-third of his purse would go to Linda Rappaport. *See* Def. Br. 1.

   C.   *The Statute of Limitations*

The Ali Act does not place a time limit on when a boxer may bring a challenge under Section 6309. Defendants argue that because the Ali Act was passed in 2000, after the enactment of the federal statute of limitations, 28 U.S.C. § 1658, that limitations period should apply. Section 1658(a), enacted in 1990, provides that, "[e]xcept as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues." Indeed,

---

[7] There are two exceptions to Section 6308, which are that paragraph (b)(1) "does not prohibit a boxer from acting as his own promoter or manager," and "only applies to boxers participating in a boxing match of 10 rounds or more." 15 U.S.C. § 6308(b)(2). These exceptions do not apply here.

other courts in this circuit have applied Section 1658(a) to the Ali Act and imposed a four-year statute of limitations on claims brought under Section 6309.  *See Pacquiao v. M&M Sports, Inc.*, No. 05-cv-4200, 2005 WL 1539281, at *1 (S.D.N.Y. June 27, 2005).

Defendants argue that Maskaev's time period for bringing an action expired in August 2010, four years after the Rahman fight on August 12, 2006.  Maskaev does not dispute the applicability of a four-year limitations period under Section 1658(a), but instead argues that he is entitled to an equitable tolling of the limitations period because he did not learn of the total revenue of $1.5 million until November 2009.  Pl. Br. 10.  Maskaev says that when he learned of the additional $500,000, he had the "remaining portion of the limitation period," which was "four years minus the time between August 12, 2006, and September 1, 2006" to file the action.  Pl. Br. 24-25.

Defendants also argue that because Maskaev is disputing whether a Muhammad Ali Act statement was received, that cause of action should accrue when Maskaev did not receive the statement, which would be the time of the Rahman fight, in August 2006.  *See* Def. Br. 26-27.  They say the November 2009 date is irrelevant in determining when Maskaev realized he did not receive such a statement.  *See id.*

Because both of Maskaev's claims arise out of the Rahman fight, the statute of limitations analysis applies to the asserted violations of both 15 U.S.C. § 6307e(b) and 15 U.S.C. § 6308(A).

1. *Section 1658(a) and Equitable Tolling*

Defendants argue that equitable tolling should not apply to the federal four-year statute of limitations, 28 U.S.C. § 1658(a).  They cite *Gabelli v. SEC*, where the United States Supreme Court found that no discovery rule for statutes of limitations should apply in

11

government penalty actions. *See* Def. Br. 17-19 (citing 133 S. Ct. 1216, 1224 (2013)). As defendants point out, the *Gabelli* case was discussed in *Kost v. Hunt*, a case that found "the absence of an intent to incorporate a discovery rule in any form into § 1658(a)." 983 F. Supp. 2d 1121, 1129 (D. Minn. 2013); *see also* Def. Br. 18-19. Indeed, *Kost* makes clear that the standard for evaluating claims under Section 1658(a) should be "accrual at the time the plaintiff has a complete and present cause of action." *See Kost*, 983 F. Supp. 2d at 1126 (citing *Gabelli*, 133 S. Ct. at 1220).

But that does not mean equitable tolling cannot apply to causes of action that accrue under Section 1658(a). Courts still consider whether the circumstances that warrant equitable tolling are present in causes of action that are measured under Section 1658(a). In *Kost*, the court decided that plaintiffs had not met their burden to show that "extraordinary circumstances prevented them from filing their claims within the statute of limitations period." *See* 983 F. Supp. 2d at 1130. Other courts have undertaken the same analysis. *See, e.g.*, *Baldwin v. City of Greensboro*, 714 F.3d 828, 839 (4th Cir. 2013) ("A federal cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action.") (citation omitted). Like those other courts, I will consider whether Maskaev has established that equitable tolling should apply in this case.

2. *Equitable Tolling for Maskaev's Claims*

Equitable tolling may be appropriate if a plaintiff establishes: "(1) the defendant wrongfully concealed material facts relating to defendant's wrongdoing; (2) the concealment prevented plaintiff's discovery of the nature of the claim within the limitations period; and (3) plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 157 (2d Cir. 2012) (citation

omitted). Stated another way, "[e]quitable tolling is an extraordinary measure that applies only when plaintiff is prevented from filing despite exercising that level of diligence which could reasonably be expected in the circumstances." *Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 322 (2d Cir. 2004) (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)).

It is Maskaev's burden to establish that he is entitled to equitable tolling. *See Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139, 1157 (2d Cir. 1995). Maskaev argues that the four-year statute of limitations began on August 12, 2006, at the time of the Rahman fight, but was tolled around September 2006 when Maskaev received the Accounting, which did not list the additional $500,000 to be received by DRP. *See* Pl. Br. 24. Maskaev asserts the limitations period should be tolled from September 2006 through November 2009, when he learned of the Top Rank Agreement. *See id.* He argues that the four-year period should begin to run in November 2009. *See id.*

Maskaev's argument misapprehends the effect of equitable tolling. Even if he is entitled to such tolling, he still had ample opportunity to file this action within the original four-year limitations period. Equitable tolling does not "reset the clock on a statutory limitations period;" instead, it allows a plaintiff to file a claim after the initial limitations period has passed. *See Rashid v. Mukasey*, 533 F.3d 127, 131 (2d Cir. 2008) (citation omitted). Courts in this circuit refuse to extend a limitations period where a plaintiff does not demonstrate that he or she was prevented from filing within the original timeframe. *See Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000) ("If the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing."); *Kai Yan Lai v. Wai Mon Leung*, No. 11-

CV-3561, 2012 WL 4472155, at *2-3 (E.D.N.Y. Aug. 31, 2012) (finding as a matter of law, plaintiff was not entitled to equitable tolling because she did not exercise due diligence after learning of her right to bring an action), *report and recommendation adopted*, No. 11-CV-3561, 2012 WL 4472143 (E.D.N.Y. Sept. 26, 2012).

Starting from August 12, 2006, the statute of limitations did not run until August 12, 2010, which is nearly one year after Maskaev learned of the Top Rank Agreement. Maskaev has offered no evidence of his efforts to file this action within the four-year timeframe or arguments as to why he failed to do so. Moreover, he does not deny that he continued to work with DRP after he learned of the Top Rank Agreement in November 2009. *See* Def. Rule 56 Stmt. ¶ 76. Instead, Maskaev waited until December 2012—more than two years after he learned of the Top Rank Agreement—to file his complaint. Maskaev has not demonstrated that extraordinary circumstances prevented him from filing on time, or that he was prevented from doing so despite exercising reasonable diligence. In December 2012, when Maskaev filed suit, the limitations period had long passed.

## CONCLUSION

For the reasons stated above, defendants' motion for summary judgment is granted. The Clerk of the Court is respectfully requested to enter judgment accordingly and to close the case.

So ordered.

John Gleeson, U.S.D.J.

Dated: October 24, 2014
       Brooklyn, New York

14